**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SCOTT BABINO & DEBBIE BABINO, Husband and Wife, | |
| Plaintiffs, | Civil Action No. 2:13-cv-05302 |
| v. | **OPINION** |
| THE BOROUGH OF OAKLAND, A BODY POLITIC OF THE COUNTY OF BERGEN, STATE OF NEW JERSEY AND ITS RESPECTIVE PUBLIC OFFICIALS, DEPARTMENTS, COMMISSIONS, AUTHORITIES, AGENCIES, EMPLOYERS, AGENTS and SUBCONTRACTORS, & JOHN DOES 1 – 99, PRESENTLY UNKNOWN, PERSONS, BUSINESS ENTITIES AND/OR BODIES POLITIC, | May 28, 2015 |
| Defendants. | |

**WIGENTON**, District Judge.

Before this Court is Defendants', Borough of Oakland ("Oakland" or "Borough") and its respective public officials, departments, commissions, authorities, agencies, employees, agents and subcontractors, and John Does 1–99 (collectively "Defendants"), Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 ("Motion").

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons set forth below, this Court will **GRANT** Defendants' Motion.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

From 2001 to approximately August 2014, Scott and Debbie Babino (collectively "Plaintiffs") lived at 9 Calumet Avenue ("Plaintiffs' Property") in Oakland, New Jersey. (Mot. for Summ. J. ("Defs' Br.") at 3.) Hurricane Irene hit the U.S. from August 20-29, 2011, and made three landfalls along the Atlantic Coast, including New Jersey. (Defs.' Stat. of Facts ¶ 1.) On September 8, 2011, in the early morning hours, stormwater overflowed the sewage system running directly in front of Plaintiffs' Property and flooded their basement and garage.[1] (*Id.* at 4.) Approximately five feet of water flooded the basement of Plaintiffs' Property. (*Id.*) The sewage line in question runs under and parallel to Calumet Avenue ("Sewage Line"). (Compl. 5.) It collects stormwater from catch basins along the road and directs it to a concrete sump/chamber located just off the paved area of Calumet Avenue. (*Id.*) Sewage Line also acts as a conduit for the Pond Brook Tributary, which flows between Calumet and Seminole Avenues, and eventually combines with the stormwater in the sump/chamber under Calumet Avenue. (*Id.*; *see also* Compl., Attach. A.) After Hurricane Irene hit and saturated the local area with heavy rainfall, Tropical Storm Lee hit, producing heavy rainfall in Oakland to a point where a clog in the Sewage Line created significant back up,[2] eventually causing the flooding of Plaintiffs' Property. (*Id.* at 6–7.)

Plaintiffs claim that their property injuries arise from Defendants failure, or negligence, in maintaining the sewer system following Hurricane Irene and before Tropical Storm Lee. (Compl. 7.) Oakland has an established maintenance program for its stormwater facilities as required by

---

[1] Both the basement and garage of Plaintiffs' Property were constructed below street level, and therefore once the stormwater overtopped the raised curb in front of the property it flowed down the driveway (which slopes downward) and into the garage and basement. (Compl. 4.) Approximately five feet of water flooded the basement of Plaintiffs' Property. (*Id.*)

[2] The daily rain totals in Oakland, NJ during Tropical Storm Lee are as follows: September 5, 2011, 0.29 inches of rain; September 6, 2011, 2.96 inches of rain; September 7, 2011, 0.41 inches of rain; and September 8, 2011, 2.30 inches of rain. (Compl. 6; Defs' Br. 5.)

the New Jersey Department of Environmental Protection pursuant to New Jersey Administrative Code Section 7:8 *et seq*. (Defs' Br. 6.) Pursuant to Oakland's Stormwater Management Plan (the "Plan"), all storm facilities were to be inspected annually "even if they were found to be 'clean' [and operational] the previous year," specifically including the catch and infiltration basins, and the storm drains. (Defs' Br., Ex. G.) If one of the basins was in need of cleaning or repair, the inspecting personnel were required to log that information. (*See id.* Exs. G–H.) The last inspection and cleaning of Oakland's stormwater basins on Calumet Avenue, prior to the September 8, 2011 flooding, took place on July 11, 2011, specifically located at 53 Calumet Avenue. (*Id.* at Ex. H.) Prior to that, the last cleaning of the basin at issue occurred on June 14, 2010.[3] (*Id.*)

Before September 9, 2011, Plaintiffs never complained about flooding or stormwater drain issues prior to the incident, nor did the maintenance log denote that that particular basin needed cleaning. (*Id.* at 5, Ex. H.) As of May 21, 2013, Oakland has been in compliance with all regulations regarding its Plan. (*Id.* at Ex. E.)

On September 4, 2013, Plaintiffs filed a nine-count Complaint against Defendants alleging violations of 42 U.S.C. § 1983 (Count One) and N.J.S.A. 10:6-2(c) (Count Two), negligence (Count Three), for declaratory judgment (Count Four), conversion/trover (Count Five), gratuitous/constructive bailment (Count Six), trespass to land (Count Seven), trespass to chattels (Count Eight), and unjust enrichment (Count Nine),[4] in connection with the flooding of their basement and garage. (Compl. 9–19.) On October 4, 2013, Defendants filed their answer to the Complaint. (Dkt. No. 4.) On October 15, 2014, Defendants filed the instant Motion pursuant to

---

[3] Notes from Oakland's Department of Public Works Storm Water Facility Maintenance indicate that basins located at the following numerical addresses on Calumet were cleaned on June 24, 2011: 10, 13, 19, 22, 43, 46, 53, 54, and 83. (Defs.' Br. Ex. H.)

[4] Plaintiffs also seek to obtain a declaratory judgment against Defendants for attorney's fees and any other relief this Court deems just and proper. (Compl. 16.)

Federal Rule of Civil Procedure 56. (Dkt. No. 16.) On November 3, 2014, Plaintiffs filed their response to Defendants' Motion. (Dkt. No. 17.) On November 6, 2014, Defendants filed their reply to Plaintiffs' opposition. (Dkt. No. 18.)

**LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions, or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving

party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23.

**DISCUSSION**

Summary judgment is appropriate as there are no genuine issues of material facts in dispute in this matter. The relevant claims and arguments are addressed below.

**Claims Pursuant to 42 U.S.C. § 1983 (Count One) and N.J.S.A. 10:6-2(c) (Count Two)**

In their Complaint, Plaintiffs allege that "Defendants failed to supervise their subordinates and had a policy custom and/or practice that caused the Plaintiffs' damages." (Compl. 10.) Further, Plaintiffs assert that "Defendant[s] deprived them of their equal protection rights as well as their privileges and/or immunities secured by the Constitution or laws of the United States and/or any substantive rights, privileges or immunities secured by the Constitution or laws of the State of New Jersey." (*Id.*)

Courts have addressed respondeat superior or vicarious liability in the context of constitutional violations. *See generally Monell v. Dep't of Soc. Serv. of City of N.Y.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *see generally Groman v. Township of Manalapan*, 47 F.3d 628 (3d Cir. 1995); *Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir. 1998). Specifically, 42 U.S.C. §1983 provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The language of §1983 "compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691; *see also Montgomery*, 159 F.3d at 126. Pursuant to § 1983, a plaintiff must identify a challenged policy and show a causal link between execution of the policy and his or her alleged injury. *See Lose v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984).

Pursuant to N.J.A.C. 7.8, *et. seq.*, the New Jersey Department of Environmental Protection requires municipalities to prepare a Municipal Stormwater Management Plan, which the Borough of Oakland had in place as of 2004 (the Plan).

Pursuant to the Borough's Plan, all catch basins were inspected once a year. If, at the time of inspection, there was no sediment or debris then that catch basin would not be cleaned. In 2011, the Borough began its annual inspections of the basins on July 11, 2011. The year before, in 2010, the Borough began the inspection process on June 14, 2010. As a result, in 2010 the cleanup was conducted in front of the basin located at 10, 13, 19, 22, 54, 53, 43, and 46 Calumet Avenue. (*See* Angeli Cert., Ex. L.)

Plaintiffs have not shown that Defendants did not comply with the Plan. Further, Plaintiffs have not demonstrated substantive, procedural due process or equal protection violations. Plaintiffs have not shown a violation due to a discriminatory or unfair procedure nor even alleged membership in a protected class for a prima facie showing of an equal protection violation. *See Rivkin v. Dover Twp. Rent Leveling Bd.*, 143 N.J. 352, 357 (1996), cert. denied 519 U.S. 911 (1996) (addressing substantive due process and equal protection violations under § 1983). Plaintiffs have not demonstrated a policy or custom evidencing deliberate indifference or an official custom or policy designed to deprive Plaintiffs of constitutional rights. As such Counts One and Two cannot be sustained at this stage.

**Count Three (Negligence)**

In Plaintiffs' Count Three for negligence, "Plaintiffs allege that Defendant owed a duty of reasonable care and breached that duty thereby causing damage to Plaintiffs." (Compl. 14.)[5]

N.J.S.A. 59:4-7 sets forth immunity of public entities from the effects of weather stating the following: "Neither a public entity nor a public employee is liable for an injury caused solely by the effect on the use of streets and highways of weather conditions." N.J.S.A. 59:4-7; *see also Horan v. State of New Jersey, et al.*, 212 N.J. Super. 132 (App. Div. 1986) ("It is clear to us that N.J.S.A. 59:4-7 has plain meaning: when weather is the [ ] culprit, government is immune."). A plaintiff cannot maintain a successful negligence action against a defendant if that party was not the cause of the plaintiff accident and resulting injuries. *Weinberg v. Dingler*, 106 N.J. 469, 485 (1987).

Plaintiffs argue that ". . . N.J.S.A. 59:4–7 has absolutely nothing to do with this case" as they "do not allege (and never have) that they suffered any injuries caused solely by the effect on

---

[5] Plaintiffs also argue several discovery issues in opposition to Defendant's Motion.

the use of streets and highways of weather conditions." (Pls.' Opp'n at 23.) Rather, Plaintiffs assert, based on the opinion of their expert, that build up within the stormwater pipe between 2005 through 2011 had existed and was so obvious that the Borough of Oakland should have exercised due care to remove the debris and correct the issue prior to September 5, 2011. (Pls.' Opp'n at 24.)

Under the Tort Claims Act, N.J.S.A. 59:1-3, liability will not be "imposed on [a] public entity for a dangerous condition of its property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable." N.J.S.A. 59:4-2. Further, palpably unreasonable "implies behavior that is patently unacceptable under any given circumstance." *Kolitch v. Lindedahl*, 193 N.J. Super. 540 (App. Div. 1984) aff'd 100 N.J 485, 493 (1985).

Here, Plaintiffs submitted the affidavit of their neighbor, Clare Russo, at 7 Calumet Ave, who provides that on or about August 26, 2011, she personally notified the Borough of Oakland that the stormwater system on Calumet Ave failed and water was gushing out of a manhole. Plaintiffs argue that as a result of her complaint, the Borough was on notice. Further, Plaintiffs assert that they did not witness anyone from the Borough check or remove debris between August 26, 2011 and September 9, 2011 as a result of Ms. Russo's communication.

Plaintiffs have not shown that the Borough had notice of a dangerous condition that would be the proximate cause of the damage suffered or that the Borough's actions were palpably unreasonable. Negligence of an employee leading to a dangerous condition or notice to the Borough of the same is not evident. Plaintiffs did not have any previous flooding issues. Also, to the extent that there may have been notice to the Borough regarding a dangerous condition, the Borough's actions do not rise to the level of palpably unreasonable.

**Conversion (Count Five)[6]**

The Restatement (Second) of Torts § 222A generally defines the common law tort of conversion as follows:

> Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.

Restatement (Second) of Torts §222A (1965).

Conversion has been defined as "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of the condition or the exclusion of an owner's rights." *Barco Auto Leasing Corp. v. Holt*, 548 A.2d 1161 (App. Div. 1988) (internal citation and quotation marks omitted). For a claim of conversion, plaintiffs need to show that the defendant intended "to exercise dominion or control over the goods which is in fact inconsistent with the plaintiff's rights." Prosser and Keaton Torts § 15 at 92 (5th ed. 1984).

Severe weather obviously played a major role in this case. The storm on September 8, 2011 produced 2.3 inches of rain. Conversion is an intentional tort, and the record does not support the assumption that Borough intentionally tried to exercise dominion and control over Plaintiffs' property.[7] *See* Restatement (Second) of Torts § 222A (1965). As such, Plaintiffs' claim for conversion cannot be sustained.

**Gratuitous/Constructive Bailment (Count Six) and Trespass (Counts Seven and Eight)**

A defendant is ordinarily considered to be a gratuitous bailee, liable only to the bailor for bad faith or gross negligence. *Capezzaro v. Winfrey*, 153 N.J. Super 267 (1977).

---

[6] Count Four is for declaratory judgment, and based on the grant of Defendant's Motion and the resolution of the other counts in this matter, this count will be dismissed.

[7] There is also no evidence that the Borough specifically took Plaintiffs' property for public use.

A trespasser is "a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise." Restatement Second of Torts § 32. Trespass to chattel is a particular type of trespass whereby a person has intentionally interfered with another person's lawful possession of a chattel. *See* Restatement of Torts §§ 217 and 218.

Here, it has not been shown that the Borough of Oakland had a bailee/bailor relationship with Plaintiffs or intentionally interfered with Plaintiffs' possessions nor trespassed on Plaintiff's land.

**Unjust Enrichment (Count Nine)**

When it would be inequitable to permit a person to retain a benefit without paying fair compensation or consideration for such benefit, the doctrine of unjust enrichment allows the courts to set forth an appropriate remedy. *See generally Adamson v Ortho-McNeil Pharm., Inc.*, 463 F. Supp. 2d 496, 505 (D.N.J. 2006); *Goldsmith v. Camden County Surrogate's Office*, 408 N.J. Super. 376, 382 (App. Div. 2009).

Here, Plaintiffs have not articulated a benefit to Defendants in this case. Further, Defendants were in compliance with the Plan and it has not been shown that they acted to receive an unjust benefit or enrichment under the circumstances. As such, and based on the analysis above, Plaintiffs cannot sustain this claim.

**CONCLUSION**

For the reasons set forth above, this Court will **GRANT** Defendants' Motion.

s/ Susan D. Wigenton, U.S.D.J.

Orig: Clerk
cc: Parties
      Magistrate Judge Mannion